**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JEFF P. SHAFFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO.: 1:17-CV-70-TLS |
| | ) |
| DEKALB COUNTY SHERIFF, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ANGIE IRELAND, Lieutenant, | ) |
| and DEKALB COUNTY SHERIFF, | ) |
| | ) |
| Cross Claimaints, | ) |
| | ) |
| v. | ) |
| | ) |
| NURSE BLAIR and QUALITY | ) |
| CORRECTIONAL CARE, LLC, | ) |
| | ) |
| Cross Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on a Motion to Dismiss Crossclaim [ECF No. 30], filed by Cross Defendants Nurse Blair and Quality Correctional Care, LLC (collectively "the Cross Defendants") on May 24, 2017. The Cross Defendants move to dismiss the Crossclaim filed by Cross Claimants Angie Ireland and DeKalb County Sheriff (collectively "the Cross Claimants") pursuant to Rule 12(b)(6), asserting that it fails to state a claim upon which relief can be granted. The Cross Claimants filed their Response [ECF No. 33] on June 7, 2017, and the Cross Defendants' Reply [ECF No. 34] was entered on June 14, 2017. For the reasons stated below, the Court grants the Motion in part and denies the Motion in part.

## BACKGROUND

On February 18, 2017, Plaintiff Jeff. P. Shaffer, an inmate at the DeKalb County Jail, filed a Complaint [ECF No. 1] against the DeKalb County Sheriff, Quality Correctional Care, Nurse Blair, and Lieutenant Ireland, asserting claims pursuant to § 1983. The Plaintiff alleges that he was placed in solitary confinement and subjected to unconstitutional conditions therein. In addition, the Plaintiff alleges that he was denied access to adequate medical care while in confinement, another constitutional violation.

On May 8, 2017, the Cross Claimants answered the Plaintiff's Complaint and filed a Crossclaim against the Cross Defendants. The Crossclaim asserts that Quality Correctional Care and DeKalb County Jail entered into a Service Agreement on July 13, 2015, "to provide health care related services including, but not limited to, medical and mental health services to inmates, as well as related services for management and training for the jail." (Crossclaim ¶¶ 1–2, ECF No. 26.) Under the Service Agreement, Quality Correctional Care is required "to indemnify, defend, and provide insurance coverage to [the Cross Claimants] for claims made against DeKalb arising from [the Cross Defendants'] performance under the contract." (*Id.* ¶ 3.)[1]

The Cross Claimants assert that the Plaintiff's allegations "implicate [Quality Correctional Care's] duty to defend and indemnify . . . under the service agreement." (*Id.* ¶ 9.)

---

[1] Specifically, the Service Agreement states that:

> [Quality Correctional Care] shall indemnify, defend, and hold SHERIFF, County Elected Officials AND, their officers and employees from any claims, costs (Including reasonable attorney's fees and court costs), expenses, direct or indirect, causes of action, penalties, liabilities, losses and damages ("Claims") actually sustained and incurred by SHERIFF or for which SHERIFF is legally liable, to the extent such claims are caused by
>     i.    negligent acts, errors or omissions or willful misconduct of [Quality Correctional Care], its officers, employees, agents and subcontractors
>     ii.    [Quality Correctional Care's] breach of any term or provision of this Agreement.

(Serv. Agreement 13, ECF No. 26-1.)

On March 28, 2017, the Cross Claimants first tendered their defense to Quality Correctional Care, and Quality Correctional Care initially agreed to defend them but upon "further clarification regarding indemnity . . . changed its mind." (*Id.* ¶ 10.) A subsequent request for indemnity was also rejected on April 25, 2017. (*Id.* ¶ 11.) Accordingly, the Cross Claimants assert that Quality Correctional Care "has breached the terms of the . . . service agreement." (*Id.* ¶ 12.)

### STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the pleading and not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court presumes all well-pleaded allegations to be true, views them in the light most favorable to a plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint or crossclaim must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for

3

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all well-pleaded facts and draw all permissible inferences in a plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly* at 555). Legal conclusions can provide a pleading's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. Determining whether a complaint or crossclaim states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Id.* at 679.

## ANALYSIS

The Cross Defendants argue in their Motion that the Crossclaim should be dismissed because it fails to state a claim against either Quality Correctional Care or Nurse Lipely. First, the Cross Defendants argue that the Plaintiff's claims are for inadequate medical care and failing to provide non-medical services, like clothing in solitary confinement, "personal hygiene supplies," and being able "to take a shower or brush his teeth." (Mot. Dismiss 5, ECF No. 31 (citing Compl. ¶¶ 5, 7, 11–12, ECF No. 1).) Because "the contractual terms clearly articulate [that] the DeKalb County Sheriff is responsible for these non-medical services," the Cross Defendants claim that they have no duty to indemnify or defend the Cross Claimants. (*Id.*) Second, the Cross Defendants argue that the Crossclaim fails as to Nurse Lipely because she is not a party to the Service Agreement and, therefore, she cannot be in breach of that Agreement.

In response, the Cross Claimants note that the Cross Defendants conflate the "duty to defend" with the "duty to indemnify." (*See* Resp. 5–8, ECF No. 33.) They claim that the former is a question of a complaint's allegations, whereas the latter requires an underlying judgment of liability. (*Id.* at 6.) The Service Agreement obligates Quality Correctional Care "to provide

4

medical services and care for inmates . . . as well as healthcare management and training," and to defend the Cross Claimants "for claims that were caused by 'negligent acts, errors or omissions or willful misconduct" by Quality Correctional Care or its agents. (*Id.*) As the allegations concern the negligent provision of medical care at the jail, "the duty to defend is triggered by the allegations contained in the Plaintiff's Complaint." (*Id.*)[2]

Indiana courts permit individual parties, even where they are not an insurance provider, to contract to defend or indemnify against negligent acts committed against another party, and will analyze those agreements using insurance contract principles. *See Tom Raper Inc. v. Safari Motor Coaches, Inc.*, No. IP 99-1188, 2001 WL 13299, at *5 (S.D. Ind. Jan. 4, 2001) (citing *Ogilvie v. Steele by Steele*, 452 N.E.2d 167, 170 (Ind. Ct. App. 1983)); *cf. Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 965 (N.D. Ill. 2012) (noting that Illinois courts generally apply the principles governing insurance contracts to contracts to defend or indemnify). The duty to defend is broader than the duty to indemnify. *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind. Ct. App. 2006); *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Although an insurer can limit its duty to defend, *cf. Walton*, 844 N.E.2d at 147 (stating that if the pleadings reveal that a claim is excluded under the policy, then no defense is required), an insurer is generally obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy, *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). Whether a party has a duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by that party after reasonable investigation. *Trisler*, 575 N.E.2d at 1023.

---

[2] The Cross Claimants do not specifically respond to the Cross Defendants' argument that Nurse Lipley is not a party to the Service Agreement.

5

In their Motion, the Cross Defendants acknowledge that the Plaintiff "alleges unconstitutional medical care during his incarceration at the DeKalb County Jail." (Mot. Dismiss 5.) The Court's own review of the Plaintiff's Complaint shows that this is the case, as the Plaintiff specifically alleges that he "developed sores on his back," "vomit[ed] and . . . experienced diarrhea" as a result of medication, and was "subject to sleep deprivation," among other allegations related to medical care. (Compl. ¶¶ 4, 6, 9.) The terms of the Service Agreement expressly state that Quality Correctional Care "agrees to provide medical treatment for the inmates of the DeKalb County Jail . . . [and] agrees to comply with all current or as may be amended in the future medical standards as detailed in the Indiana Jail Standards." (Serv. Agreement 1.) Also, the terms state that Quality Correctional Care was responsible for the training of correction officers in proper medical care techniques. (*Id.* at 3–4.) Accordingly, the Court finds that the Plaintiff's underlying claim for unconstitutional medical care may fall within Quality Correctional Care's duty to defend under the Service Agreement. *Fed. Ins. Co.*, 127 F.3d at 566.

Be that as it may, the Cross Defendants nevertheless argue that they have no duty to defend because, in addition to the Plaintiff's medical claims, the Plaintiff also alleges claims that are not related to medical care, and thus are not within the ambit of the Service Agreement's terms. The Service Agreement states that "the SHERIFF shall provide for all other (non-medical) needs of the inmates of the DeKalb County Jail including but not limited to: daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and linen supplies." (Serv. Agreement 10.) But the Cross Defendants offered no legal authority, and the Court is unaware of none, that requires *all* of the claims to possibly fall within the scope of the duty in order to activate the duty to defend. Rather, the standard is only that an insurer must

6

defend "against suits alleging facts that *might fall* within the coverage of the policy." *Fed. Ins. Co.*, 127 F.3d at 566 (emphasis added). The Court already found that the Plaintiff's claims for unconstitutional medical care might fall within the Service Agreement's duty to defend, and the Cross Defendants suggested as much in briefing. Whether or not some of the Plaintiff's claims implicate non-medical needs like "personal hygiene supplies and linen supplies" does not affect the analysis.[3]

Although the Court finds that the Plaintiff's suit alleges facts that "might fall" within the terms of the Service Agreement for purposes of the duty to defend, *Id.*, the Cross Defendants contend that Nurse Lipely, who is not a signatory to the Service Agreement, may not be sued for breach of it. "The unambiguous language of a contract is conclusive *upon the parties to the contract* and upon the courts." *Peoples Bank & Tr. Co. v. Price*, 714 N.E.2d 712, 716 (Ind. Ct. App. 1999) (emphasis added). "It goes without saying that a contract cannot bind a nonparty." *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015) (quoting *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002)). Here, only the DeKalb County Sheriff's Office and Quality Correctional Care signed the Service Agreement. Because Nurse Lipely did not sign the contract, she is not a party to the Service Agreement and thus has no duty to defend the Cross Claimants against allegations that the Cross Defendants were negligent in providing medical care. Accordingly, Nurse Lipely is dismissed from the Crossclaim.

---

[3] Moreover, factual discovery will likely show which of the Plaintiff's claims involve medical care and which involve non-medical care. All that is required at this stage is a determination of "plausibility," rather than the resolution of these factual question, and thus another reason why the Cross Defendants' Motion to Dismiss should be denied.

## CONCLUSION

For the reasons stated above, the Cross Defendants' Motion to Dismiss Crossclaim is GRANTED IN PART and DENIED IN PART [ECF No. 30]. Cross Defendant Nurse Lipely is DISMISSED from this case.

SO ORDERED on July 27, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT